**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| DBS SOLUTIONS LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | No. 3:15-CV-03875-M |
| | § | |
| INFOVISTA CORPORATION, | § | |
| INFOVISTA S.A., IPANEMA | § | |
| TECHNOLOGIES CORPORATION, | § | |
| AND IPANEMA TECHNOLOGIES S.A., | § | |
| | § | |
| Defendants. | § | |

<u>**MEMORANDUM OPINION AND ORDER OF DISMISSAL**</u>

Before the Court is the Motion to Dismiss filed by Defendants InfoVista Corporation and Ipanema Technologies Corporation [Docket Entry #12], and the Motion for Leave to Amend the Complaint filed by Plaintiff DBS Solutions LLC [Docket Entry #20].  For the reasons stated below, the Motion to Dismiss is **GRANTED** and the Motion to Amend is **DENIED**.

**BACKGROUND**

Plaintiff DBS Solutions LLC, a Texas limited liability company providing network, network security, and other technological services, claims it was defrauded by Defendants, companies which develop, manufacture, and distribute an integrated system consisting of hardware and embedded software that optimizes wide-area network application performance ("the Ipanema System").  Plaintiff claims that Ipanema Technologies S.A. (a French company) and Ipanema Technologies Corporation (Ipanema Technologies S.A.'s wholly owned United States subsidiary) fraudulently induced Plaintiff to purchase the Ipanema System by agreeing that, if Plaintiff purchased it, they would select Plaintiff to complete work under a lucrative

1

contract between AT&T and the State of Texas.

The Ipanema entities allegedly represented that, pursuant to that contract, they were responsible for installing hardware at thousands of locations across Texas, and, if Plaintiff purchased the Ipanema System, the Ipanema entities would enter into a subcontract with Plaintiff to complete the installations, otherwise called the "Truck Roll."  Plaintiff maintains that, in reliance on the Ipanema entities' promises, DBS purchased the Ipanema System, only to discover the Ipanema entities never had authority to award the Truck Roll, and that AT&T had already contracted with another company to complete it.

In March of 2015, in conjunction with Plaintiff's purchase of the Ipanema System, Plaintiff and Ipanema Technologies S.A. entered into a Value Added Reseller Agreement ("the VAR"), which authorized Plaintiff to resell Ipanema products, services, and support, and governed various aspects of the parties' relationship.  The VAR, which Ipanema Technologies S.A. entered into "in its own name as well as on behalf of its wholly owned affiliates," includes limitations on liability, as well as choice of law and forum selection clauses, which provide that the VAR "shall be governed and interpreted by the laws of France" and that "[a]ny dispute or claim arising out of or relating to [the VAR] shall be litigated in the Paris Commercial Court." VAR [Docket Entry #15], at § 2.5.

Plaintiff alleges that the Ipanema entities have merged with InfoVista S.A. (a French corporation) and InfoVista Corporation (a United States entity), and Plaintiff asserts all of its claims against all four companies.  Only the United States entities, Ipanema Technologies Corporation and InfoVista Corporation, have been served.  Those entities filed the current Motion, seeking dismissal on the grounds of *forum non conveniens*, or, alternatively, under Federal Rule of Civil Procedure 12(b)(6).  On March 28, 2016, the Court ordered the parties to

provide supplemental briefing on law governing interpretation of the VAR and the forum

selection clause, which the parties have done [Docket Entries #29 and #32].

## DEFENDANTS' MOTION TO DISMISS

The moving Defendants claim this case must be dismissed against them, because the

VAR's forum selection clause mandates that the case be prosecuted in the Paris Commercial

Court.[1]  Plaintiff responds that the VAR's forum selection clause does not apply, because this

lawsuit is not "related to" the VAR.  Instead, Plaintiff claims the Ipanema entities represented

that the VAR was "just a formality," required to assign Plaintiff a customer number in the

Ipanema order system, that the parties never intended Plaintiff to be a reseller of the Ipanema

System, and that the VAR has not in fact governed the parties' relationship.  Decl. of Jack D.

Nash III [Docket Entry #21-2], at ¶ 6.[2]  Plaintiff also claims it does not "have the financial

resources to pursue its claims in France."  *Id.* at ¶ 17.

The United States Supreme Court has held that the doctrine of *forum non conveniens* is

the way to enforce a forum selection clause, even one selecting a foreign forum.  *Atl. Marine

Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, __ U.S. __, 134 S. Ct. 568 (2013).  Under

that doctrine, courts determining whether to enforce a mandatory forum selection clause

consider: 1) whether the clause is valid and applicable; 2) whether it is enforceable; and 3)

---

[1] The moving Defendants did not sign the VAR, but Plaintiff does not argue that they lack standing to rely
on the forum selection clause.
[2] Defendants object to some portions of the Nash Declaration [Docket Entry #25 at 10].  Because the
outcome is the same, regardless of whether the Court considers those portions of the Declaration, the
Court need not resolve those objections.

whether it is outweighed by various public interest factors.[3]  *See Weber v. PACT XPP Techs.,*

*AG*, 811 F.3d 758 (5th Cir. 2016).

As an initial matter, the Court must determine whether the forum selection clause, which

applies to "[a]ny dispute or claim arising out of or relating to [the VAR]," governs this dispute.

The Fifth Circuit recently made clear that although federal law governs the *enforceability* of

forum selection clauses, it does not govern *interpretation* of such clauses.  *Weber*, 811 F.3d at

770.  Thus, federal courts sitting in diversity must apply the forum state's choice-of-law rules to

determine what law applies in interpreting a forum selection clause.  *Id.*  This Court therefore

must look to Texas choice-of-law rules.

Texas courts "permit choice-of-law agreements and the default position is that they are

enforceable."  *Cardoni v. Prosperity Bank*, 805 F.3d 573, 581 (5th Cir. 2015).  Defendants claim

the default position of enforceability applies, so the Court must apply French law when

interpreting the VAR.  Supp. Br. [Docket Entry #29] at 2–4.  Plaintiff makes no argument that

the default position is not applicable, instead merely assuming that Texas law applies, and

applying only Texas law.  Supp. Br. [Docket Entry #33] at 1.  Because Plaintiff made no attempt

to overcome the default position under Texas law that the VAR's choice of law provision is

valid, the Court concludes that the forum selection clause should be interpreted according to

French law.

---

[3] It is undisputed that the clause, which provides that "any dispute" related to the VAR "shall be litigated" in France, is mandatory, not permissive.  *See Aerus LLC v. Pro Team, Inc.*, 2005 WL 1131093, at *4 (N.D. Tex. May 9, 2005) (Lynn, J.).  Further, as Plaintiff does not contest, the Paris Commercial Court is an adequate and available foreign forum.  *See Oui Fin. LLC v. Dellar*, 2013 WL 5568732, at *5 (S.D.N.Y. Oct. 9, 2013) (recognizing the Paris Commercial Court as a court of competent jurisdiction, with adequate procedural safeguards); *Gambra v. Int'l Lease Fin. Corp.*, 377 F. Supp. 2d 810, 817 (C.D. Cal. 2005) ("French courts have a rigorous judicial system that seeks to promote fair proceedings and debate.").  Defendants have consented to the jurisdiction of the Paris Commercial Court.  Def. Br. [Docket Entry #12] at 8–9.

4

In determining foreign law, courts may consider "any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."  Fed. R. Civ. P. 44.1; *see Bodum USA, Inc. v. La Cafetiere, Inc.*, 621 F.3d 624, 628 (7th Cir. 2010) (stating that courts may consider expert testimony and English-language descriptions of French law).  Under French law, courts interpreting a contract attempt to discern the mutual intent of the parties.  *Principles of French Law* (2d ed.) (John Bell, Sophie Boyron, and Simon Whittaker).  However, "a clear and precise contract must not be 'denatured' by resort to one party's declaration of intent."  *Bodum USA, Inc.,* 621 F.3d at 628–38; *Principles of French Law* (courts must not "under the pretext of equity exclude the legal consequences of agreements") (citing France's highest court, the Cour De Cassation)).  French courts favor forum selection clauses in international commercial agreements.  *See Private International Law and Global Governance*, 154 (Horatia Muir Watt and Diego P. Fernandez Arroyo ed.).  According to a summary of French law provided by Defendants, which Plaintiff has not challenged, French courts have treated broadly language similar to that at issue, including within its terms disputes which have some connection to the contract.  Supp. Br. at 5.

The Court finds that this dispute is "related to" the VAR under French law.[4]  Plaintiff argues that the VAR is not implicated because Plaintiff "has not sued to . . . enforce [or] get out

---

[4] The result would be the same under federal common law or Texas law.  *See, e.g., Terraspan, LLC v. Rave, LLC,* 2012 WL 6115721 (N.D. Tex. 2012) (Kinkeade, J.) ("The question is whether the facts and claims alleged in the complaint have a direct or indirect connection, link or association with, or relation to the contractual relationship."); *TGI Friday's Inc. v. Great Nw. Restaurants, Inc.*, 652 F. Supp. 2d 750, 759 (N.D. Tex. 2009) (Fitzwater, J.) ("Forum selection clauses covering claims 'relating to' an agreement are broad in scope."); *Hoffman v. Burroughs Corp.*, 571 F. Supp. 545, 547 (N.D. Tex. 1982) (Hill, J.); *In Re International Profit Associates, Inc.,* 274 S.W.3d 672, 677 (Tex. 2009) ("[W]e look to federal law for guidance in analyzing forum selection clauses"); *RSR Corp. v. Siegmund,* 309 S.W.3d 686, 701 (Tex. App.-Dallas 2010) ("Courts . . . conclude such clauses are broad and encompass all claims that have some possible relationship with the agreement, including those claims that may only 'relate to' the agreement. . . . The phrase 'relates to,' in particular, is recognized as a very broad term.").

of" the VAR.  Pl. Br. [Docket Entry #21-1] at 1.  However, by its plain terms, the VAR's clause

is not limited to claims that *arise from* the VAR.  Instead, it broadly encompasses all claims with

a connection to the VAR.  The parties entered into the VAR as part of the transaction that forms

the basis of this lawsuit, at the same time as, and in connection with, Plaintiff's purchase of the

Ipanema System, which Plaintiff claims it was induced to enter by fraud.  Plaintiff concedes it

entered into the VAR to receive a customer number to complete that purchase.  Nash Decl.

[Docket Entry #21-2], at ¶¶ 6, 9.  Further, the VAR, by its terms, relates to licensing of

Ipanema's "Salsa Enterprise Software," which Plaintiff has described as "a necessary part of the

Ipanema [S]ystem" it purchased.[5]  Nash Decl. [Docket Entry #21-2], at ¶ 4.  In short, this case is

about Plaintiff's purchase of the Ipanema System.  Plaintiff entered the VAR to complete that

purchase, and the terms of the VAR relate to at least one component of the Ipanema System.

The VAR thus was a necessary part of the transaction at the heart of this case.

Additionally, "[i]f enforcement of a provision in the Agreement is a defense to a claim,

that claim involves a right or remedy under the contract and should fall within the scope of the

forum selection clause."  *Soil Bldg. Sys. v. CMI Terex Corp.*, 2004 WL 1283966, at *8 (N.D.

Tex. 2004) (Fish, J.) (quoting *Penn, LLC. v. New Edge Network, Inc.,* 2003 U.S. Dist. LEXIS

17664, at *7 (N.D. Ill. Oct. 1, 2003)).  The VAR is relevant to an affirmative defense, as

Defendants rely on the VAR's limitation of liability provisions, which apply to *any claims*

"related to" the VAR.  VAR [Docket Entry #15], at § 2.3.1.  Determination of Plaintiff's claims

therefore will require examination of the VAR.

Because the forum selection clause applies to this dispute, the Court must evaluate

---

[5] Plaintiff claims that the fact that the VAR relates to licensing of the Salsa software is irrelevant, because
the VAR also refers to other software which Plaintiff did not purchase.  The Court does not agree that,
because Plaintiff did not purchase a system containing all of the software covered by the VAR, the VAR
is not related to Plaintiff's purchase of a system including some of the software covered by the VAR.

whether it is enforceable.  The Fifth Circuit applies a strong presumption in favor of the

enforcement of mandatory forum selection clauses.  *Weber*, 811 F.3d at 773 (citing *Haynsworth*

*v. The Corp.,* 121 F.3d 956, 962–63 (5th Cir. 1997)).  The presumption of enforceability may be

overcome, however, by a clear showing that the clause is unreasonable under the circumstances.

*Id.*  Unreasonableness potentially exists where:

> (1) the incorporation of the [forum selection clause] into the agreement was the
> product of fraud or overreaching; (2) the party seeking to escape enforcement
> 'will for all practical purposes be deprived of his day in court' because of the
> grave inconvenience or unfairness of the selected forum; (3) the fundamental
> unfairness of the chosen law will deprive the plaintiff of a remedy; or (4)
> enforcement of the [forum selection clause] would contravene a strong public
> policy of the forum state.
>
> *Id.* (quoting *Haynsworth,* 121 F.3d at 963).[6]

Plaintiff argues that it cannot afford to litigate its claims in France and that enforcing the

clause would therefore deprive it of its day in court.  However, *Atlantic Marine* bars

consideration of a party's convenience when the parties contractually chose a forum.  *Atl. Marine*

*Const. Co.*, 134 S. Ct. at 581–82 ("When parties agree to a forum selection clause, they waive

the right to challenge the preselected forum as inconvenient or less convenient for themselves or

their witnesses, or for their pursuit of the litigation.").[7]  Even if the Court could consider this

---

[6] The Fifth Circuit applied the *Haynsworth* enforceability factors in *Weber*, demonstrating that the *Haynsworth* analysis survives *Atlantic Marine*.  The Court notes some of the *Haynsworth* factors appear in tension with *Atlantic Marine*, as they overlap with the "private interest factors" considered in deciding motions to transfer, which include "relative ease of access to sources of proof; . . . the cost of obtaining attendance of willing witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive."  *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241, n. 6 (1981).  *Atlantic Marine* makes clear that courts may not consider the private interest factors or refuse to enforce forum selection clauses based on inconvenience to a party.  134 S. Ct. at 581–82.  Arguments that the selected forum will be inconvenient therefore cannot be used to demonstrate unenforceability.

[7] The *Weber* Court considered whether the plaintiff would be deprived of his day in court by being required to litigate abroad, but only to determine whether a legal remedy for the alleged wrong would be available in a German forum, not to consider the expense of litigating in another country.  Plaintiff does not allege that there would be no available remedy for the type of wrong alleged here in the Paris Commercial Court.

argument, "the expense of trying a case in a particular forum" has long been "insufficient to satisfy a party's burden" of demonstrating grave inconvenience and unfairness under *Haynsworth*. *Abramson v. America Online, Inc.*, 393 F. Supp. 2d 438, 442–43 (N.D. Tex. 2005) (Lynn, J.) (rejecting a plaintiff's argument that she would be deprived of her day in court because she could not afford to litigate in the chosen forum).

Plaintiff also claims enforcing the clause would contravene a strong Texas public policy in favor of fairness in government contracts, because this case alleges that Defendants made fraudulent representations regarding a subcontract to a contract with the State of Texas. The fraud alleged, however, is not fraud on the State of Texas. This is a dispute between private parties, and Texas has no stronger public policy against the fraud alleged here than it does against any other fraud involving Texans. Further, Texas has a countervailing "strong public policy that parties be held liable to what they contracted for." *Trevino v. Cooley Constructors, Inc.*, 2014 WL 2611823 at *5 (W.D. Tex. June 9, 2014).

Because the forum selection clause applies and is enforceable, the Court must enforce it, unless this is an exceptional case where the public-interest factors of the *forum non conveniens* analysis dictate a contrary result. In this context, the Plaintiff's choice of forum will not be given any weight. *Id.* at 581.

The public-interest factors are "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *In re Lloyd's Register N. Am., Inc.*, 780 F.3d 283, 293–94 (5th Cir. 2015) (quoting *Atlantic Marine* at 581 n. 6). "Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Atl. Marine Const. Co.*, 134 S.

Ct. at 581-82 (internal quotation marks and citation omitted) (A valid forum selection clause is "given controlling weight in all but the most exceptional cases"); *In re Lloyd's Register N. Am., Inc.*, 780 F.3d 283, 293-94 (5th Cir. 2015); *In re Rolls Royce Corp.*, 775 F.3d 671, 673 (5th Cir. 2014).

Plaintiff argues that *Atlantic Marine* does not apply because it is limited to cases where a forum selection clause is "a critical factor in [the parties'] agreement to do business together," and there is no evidence that the forum selection clause was a critical factor here, where the parties did not negotiate regarding the clause. First, although *Atlantic Marine* notes that forum selection clauses *may* sometimes be a critical factor in parties' agreements to do business, its holding is not limited to cases where the parties specifically negotiated regarding a forum selection clause. 134 S. Ct. at 583. Second, the facts Plaintiff alleged do not support its position. Plaintiff admits Defendants required Plaintiff to sign the VAR before allowing Plaintiff to purchase the Ipanema System. Thus, like the forum selection clause at issue in *Atlantic Marine*, the forum selection clause may have been critical to Defendants' decision to enter into business with Plaintiff. In any case, even before *Atlantic Marine*, the Fifth Circuit "rejected the argument that a nonnegotiated forum clause . . . is never enforceable simply because it is not the subject of bargaining," and repeatedly enforced nonnegotiated clauses. *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 520 (5th Cir. 2006); *Haynsworth*, 121 F.3d at 965.

Plaintiff claims that the local interest in having localized interests decided at home favors maintaining the suit in Texas, because relevant negotiations and agreements took place in Texas, while France has little interest in the dispute, and Plaintiff's claims will be governed by Texas

law, with which Texas courts are more familiar than are French courts.[8]   These are not

exceptional circumstances.  *See Harries v. Stark*, 2015 WL 4545071, at *12 (N.D. Tex. July 28,

2015) (Lindsay, J.).  The location of negotiations, parties, and applicable law are ordinary, not

exceptional, considerations, and thus will not prevent transfer under *Atlantic Marine*.  *See*

*Weber*, 811 F.3d at 776 (concluding that Texas's interest in "protecting [its] citizens from abuse

by foreign corporations . . . manifestly is not the sort of exceptional circumstance that justifies

disregarding the parties' agreement on public-interest-factor grounds").  Further, France has a

similar interest in this dispute, as two Defendants are located in France, where the VAR states

that disputes will be litigated.

In short, this is not an exceptional case, and the Court must defer to the parties' choice of

forum.  Thus, the Motion to Dismiss is **GRANTED**.

### PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Plaintiff seeks to clarify its pleadings and add claims for aiding and abetting and

conspiracy.  Plaintiff concedes that the proposed amendments are irrelevant to the Motion to

Dismiss.  Pl. Br. [Docket Entry #20] at 2.  Because the Motion to Dismiss is granted, the Motion

for Leave to Amend is **DENIED** as moot.

### CONCLUSION

This case is therefore **DISMISSED** against Defendants InfoVista Corporation and

Ipanema Technologies Corporation, without prejudice to suit in the Paris Commercial Court.

Because the Court grants the Motion to Dismiss on *forum non conveniens* grounds, the Court

need not reach Defendants' arguments under Rule 12(b)(6).  Accordingly, Plaintiff's Motion to

---

[8] Plaintiff also argued this case should be litigated here because Defendants were also named defendants in another case related to the Truck Roll filed in Dallas County District Court and removed to this Court. *Link America, LLC v. InfoVista Corp., et al.*, No. 3:16-cv-00542.  However, that case been transferred out of this district. *Link America, LLC v. InfoVista Corp., et al.*, No. 3:16-cv-00542, at Docket Entry #14.

Amend is **DENIED** as moot.

Plaintiff has not served Defendants InfoVista S.A. or Ipanema Technologies S.A. Because nearly eight months have elapsed with no apparent effort by Plaintiff to serve these French entities, the claims against them are **DISMISSED** without prejudice for want of prosecution.  Fed. R. Civ. P. 41(b); *Link v. Wabash R.R. Co*., 370 U.S. 626, 630–33 (1962).

**SO ORDERED.**

July 21, 2016.

_____
**BARBARA M. G. LYNN**
**CHIEF JUDGE**

11